# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 05-2808

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

WILLIAM ESKRIDGE,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 93-CR-15—**C. N. Clevert**, *Judge.*

_____

SUBMITTED DECEMBER 13, 2005—DECIDED APRIL 19, 2006

_____

Before POSNER, WILLIAMS, and SYKES, *Circuit Judges.*

POSNER, *Circuit Judge.* William Eskridge was convicted in 1992 of federal crimes and was sentenced to two consecutive prison terms to be followed by two concurrent 36-month terms of supervised release. He violated the terms of his supervised release in 2002, 2004, and 2005, and each time was sent back to prison. He appeals from the imposition in 2005 of a 22-month prison term on the basis of his latest violation. His lawyer moved to withdraw on the ground that there is no nonfrivolous ground for challenging the term. *Anders v. California*, 386 U.S. 738, 744 (1967).

We think there is a nonfrivolous ground, and in the usual case that would require us to deny the lawyer's motion to withdraw and order counsel to brief the merits before we could decide the nonfrivolous issue, because to do otherwise would violate the appellant's constitutional right to counsel. *Smith v. Robbins*, 528 U.S. 259, 277 (2000); *Penson v. Ohio*, 488 U.S. 75, 83-84 (1988). But this presupposes that the appellant *has* a constitutional right to counsel, and he may not in a case in which he is complaining not about an ordinary criminal judgment but about a revocation of supervised release and concomitant order returning him to prison. *Anders* was based not on the Sixth Amendment's right to counsel, which does not extend to appellate proceedings, *Martinez v. Court of Appeal*, 528 U.S. 152, 160 (2000), but on the idea, first announced in *Douglas v. California*, 372 U.S. 353 (1963), that the equal protection of the laws requires the government to provide the indigent with counsel in the initial appeal from a criminal conviction if the affluent are permitted to appeal with the assistance of counsel. In the situation, analogous to that presented in this case, of revoking probation, the Supreme Court has held that the defendant has a constitutional right to counsel only if the denial of counsel would violate due process of law, which ordinarily will be true only if the defendant makes a colorable claim "(i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate." *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973); see also *United States v. Yancey*, 827 F.2d 83, 89 (7th Cir. 1987).

The Court did add that "the responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be capable of speaking effectively for

himself." 411 U.S. at 790-91; see *United States v. Stocks*, 104 F.3d 308, 311 (9th Cir. 1997). But we interpret this to be a reference to cases in which it is unclear whether the two criteria that constitute the test quoted in the preceding paragraph have been satisfied. If it is clear that they have not been satisfied, it is unnecessary to ask whether the probationer can represent himself effectively. For if that were a free-standing test of due process, cases (cited below) that deny a right of counsel in postconviction proceedings would not make sense, for the issues presented in such proceedings are often quite beyond the ability of the average prisoner to address effectively.

We cannot think of any reason for using a different test for when there is a right to counsel in proceedings to revoke supervised release from *Gagnon*'s test of the right to counsel in proceedings to revoke probation, given the similarity between the two types of revocation, as we noted in *United States v. Dillard*, 910 F.2d 461, 464 n. 2 (7th Cir. 1990) (per curiam); see also *United States v. Jones*, 299 F.3d 103, 109 (2d Cir. 2002). It is true that we assumed in *United States v. Goad*, 44 F.3d 580, 586, 589 (7th Cir. 1995), that there is a right to counsel in supervised-release cases, but it was merely an assumption. The Second Circuit assumed the contrary in *United States v. Pelensky*, 129 F.3d 63, 68 n. 8 (2d Cir. 1997), and the Ninth Circuit is on both sides of the issue. Compare *United States v. Musa*, 220 F.3d 1096, 1102 (9th Cir. 2000), which did not cite *Gagnon*, with *United States v. Soto-Olivas*, 44 F.3d 788, 792 (9th Cir. 1995), which did. We now hold that the proper approach is the one that the Supreme Court's *Gagnon* opinion prescribed for revocation of probation.

Since Eskridge did not deny that he had violated the conditions of his supervised release or suggest any grounds in justification or mitigation, due process did not entitle him

to counsel either in the district court, where in fact he had counsel by virtue of 18 U.S.C. §§ 3006a(a)(1)(C), (E) (2004 & Supp. I), and Fed. R. Crim. P. 32.1, or in this court. The statute, it is true, entitled him to counsel in this court as well, 18 U.S.C. § 3006A(c), and if his lawyer failed to brief a nonfrivolous issue this might make his representation of Eskridge "ineffective" and therefore inconsistent with the requirement that the Supreme Court has read into the Sixth Amendment that a criminal defendant's counsel be effective. But that is of no moment as far as *Anders* is concerned, since Eskridge has no Sixth Amendment right to counsel (nor, unlike Douglas and Anders, a right founded on the equal protection clause). *Pennsylvania v. Finley*, 481 U.S. 551 (1987), so held in the analogous case of postconviction counsel; see also *United States v. Kimberlin*, 898 F.2d 1262, 1265 (7th Cir. 1990). So we are not precluded from addressing the merits of Eskridge's appeal and affirming the district court's judgment if we determine that the appeal, though not frivolous, is also not meritorious. Even more clearly, we are free to reverse. So let us turn to the merits.

When Eskridge was first convicted, the supervised-release statute provided that a defendant whose release was revoked could not be reimprisoned for more than two years if the offense of conviction was merely a Class C or Class D felony; Eskridge had been convicted of one of each. 18 U.S.C. § 3583(e)(3) (1988 & Supp. IV). This ceiling applied, moreover, to the aggregate of reimprisonments based on multiple revocations. *United States v. Beals*, 87 F.3d 854, 857-58 (7th Cir. 1996), overruled on other grounds by *United States v. Withers*, 128 F.3d 1167 (7th Cir. 1997); *United States v. Merced*, 263 F.3d 34, 37 (2d Cir. 2001) (per curiam); *United States v. Brings Plenty*, 188 F.3d 1051, 1053 (8th Cir. 1999) (per curiam). Before his latest revocation, Eskridge had

served 14 months in prison for his previous revocations, and so, since two years equals 24 months, he could not be sentenced to more than 10 months for the third revocation. Or so it might seem. But there is a wrinkle. To straighten it out will require a brief excursus into an esoteric corner of federal criminal procedure.

Congress in 1994 ordained that upon revoking a term of supervised release, the district court could impose a prison term followed by more supervised release. 18 U.S.C. § 3583(h). Eskridge was originally sentenced in 1992, however, and in *Johnson v. United States*, 529 U.S. 694 (2000), the Supreme Court held that section 3583(h) could not be applied retroactively. But the Court also held that upon revocation of a term of supervised release imposed prior to the enactment of that statute, the district court could impose a term of reimprisonment *and* a further term of supervised release, provided that the sum of the terms did not exceed the original term of supervised release. When as in this case supervised release is revoked and the defendant reimprisoned, he gets no credit for time previously served on supervised release. 18 U.S.C. § 3583(e)(3) (1988 & Supp. IV); *United States v. Withers, supra*, 128 F.3d at 1169 n. 3. So while Eskridge was entitled to 14 months' credit for the reimprisonment time that he served, he was entitled to no credit for the portion of the 36 months of supervised release that he had served before revocation. The same is true with respect to the portions of the 26-month and 12-month terms of supervised release that he served after the first and second revocations, respectively, before they were also revoked. And so the judge was entitled to impose those terms, even though the sum of them plus the 14 months of reimprisonment exceeded the original term of supervised release (52 > 36).

But here is the problem. When Eskridge's supervised release was first revoked in 2002, the district judge was revoking concurrent terms of supervised release because that is what he had imposed in his original sentencing. But when he then sentenced Eskridge to 26 more months of supervised release, he did not indicate in the judgment order whether these were two (concurrent) terms or one term. In 2004, he imposed concurrent terms of supervised release but this was proper only if he was revoking two terms rather than one. When 2005 arrived and the judge again revoked supervised release, if he was revoking only one term of supervised release he could reimprison Eskridge for only 10 more months because Eskridge had already served 14 months of reimprisonment. For remember that the maximum reimprisonment, regardless of the number of revocations of supervised release, is 24 months.

The reason it matters whether the 26 months of supervised release represented one term or two concurrent terms is that consecutive terms of imprisonment may be imposed upon revocation of concurrent terms of supervised release. *United States v. Deutsch*, 403 F.3d 915, 917 (7th Cir. 2005) (per curiam). So if in 2002 the district judge actually imposed two terms of supervised release, he had two terms that he could revoke in 2004 and 2005 and he could then have ordered Eskridge to serve consecutive 10-month prison terms without violating the 2-year maximum. (Of course two consecutive 10-month terms don't add up to 22 months, the sentence that the judge imposed, but only to 20 months. We do not know what the judge was thinking; but as will become apparent, this mystery need not be unraveled.)

In *United States v. Gresham*, 325 F.3d 1262, 1263 and n. 1 (11th Cir. 2003), the defendant had pleaded guilty to five counts of bank robbery and had been sentenced to 87 months in prison followed by 60 months of supervised

release. The court of appeals interpreted the sentence of supervised release as having been imposed on each count, to run concurrently. It wouldn't have made any sense for the judge to have imposed supervised release on only one count. That is equally true in this case, especially when the judge had imposed concurrent terms of supervised release on each of the two counts of conviction, both in his original sentencing and in his second revocation of supervised release. (The third time he merely ordered Eskridge reimprisoned; he did not impose a further term of supervised release.)

If the failure of the judgment order to state that the judge was imposing two (concurrent) terms of supervised release in the first revocation was merely a clerical error— that is, if the court announced two new terms but the clerk who typed the 2002 judgment included just one— then Rule 36 will allow correction even now. *United States v. Smith*, 438 F.3d 796, 799-800 (7th Cir. 2006). But if the order accurately reflects the judge's decision, however mistaken, to impose just a single term, it cannot be corrected because none of the statutory provisions authorizing the sentencing judge to modify a sentence that he has imposed is applicable to this case. Absent those, a district judge may still correct a final judgment in a criminal case to reflect the sentence he actually imposed but he cannot change the sentence he did impose even if the sentence was erroneous. *Id.; United States v. Daddino*, 5 F.3d 262, 264-65 (7th Cir. 1993) (per curiam); *United States v. Layman*, 116 F.3d 105, 108-09 (4th Cir. 1997); *United States v. Werber*, 51 F.3d 342, 346-49 (2d Cir. 1995).

To resolve the issue of clerical error versus judicial error, we sent for the transcript of the sentencing hearing. *United States v. Becker*, 36 F.3d 708, 710 n. 2 (7th Cir. 1994). There we discover that in imposing supervised release in the first revocation the judge stated: "Because of the short

term imposed in this matter the court is going to also continue you on supervised release for a term of 26 months." *A term*. This was the sentence and it was accurately reflected in the written judgment, which means that the judge could not impose consecutive 10-month terms of imprisonment when Eskridge again violated the terms of his supervised release. The judgment must therefore be vacated and the case remanded for resentencing.

We deny the motion of Eskridge's lawyer to withdraw as counsel, since Eskridge has a statutory right to counsel in subsequent proceedings in this case both in the district court and if necessary in this court.

VACATED AND REMANDED

A true Copy:

Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*