PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2653
_____

UNITED STATES OF AMERICA

v.

PERCY DILLON,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-93-cr-00084-002)
District Judge: Honorable Alan N. Bloch

_____

Argued May 15, 2013
Before: SMITH, FISHER and CHAGARES, *Circuit Judges*.

(Filed: August 5, 2013)

Renee Pietropaolo, Esq. (ARGUED)
Office of Federal Public Defender
1001 Liberty Avenue
1500 Liberty Center

Pittsburgh, PA  15222
        *Counsel for Appellant*

Rebecca R. Haywood, Esq.
Michael L. Ivory, Esq. (ARGUED)
Office of United States Attorney
700 Grant Street, Suite 4000
Pittsburgh, PA  15219
        *Counsel for Appellee*

————

OPINION OF THE COURT

————

FISHER, *Circuit Judge*.

Percy Dillon appeals from the sentence imposed by the District Court following a violation of the conditions of his supervised release.  In 1993, Dillon was convicted of three drug-related felony counts and was sentenced to 322 months in prison along with "a term" of five years of supervised release.  Dillon argues that by using this language, the District Court sentenced him to a single term of supervised release, rather than to three concurrent terms, and that it was therefore plain error for the District Court to impose three consecutive terms of reimprisonment and three concurrent terms of supervised release when it revoked Dillon's supervised release in 2012.  We will vacate Dillon's sentence and remand to the District Court for resentencing.

2

## I.

On September 17, 1993, a jury convicted Dillon and his co-conspirator Jerron Lollis of (1) conspiracy to distribute more than 50 grams of crack and 500 grams of cocaine, in violation of 21 U.S.C. § 846 ("Count One"); (2) use of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) ("Count Two"); and (3) possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) ("Count Four"). At a sentencing hearing on November 19, 1993, the District Court announced its sentence:

> "Pursuant to the Sentencing Reform Act of 1984 it is the judgment of the Court that the defendant, Percy Dillon, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 322 months. This term consists of a term of 262 months as to Counts 1 and 4 and a term of 60 months as to Count 2 to be served consecutively with the term imposed at Counts 1 and 2 [*sic*; should be "Counts 1 and 4"].

> "Upon release from imprisonment the defendant shall be placed on supervised release for a term of five years."

App. at 39. Three days later, the District Court filed its written judgment of sentence:

3

> "The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of three-hundred and twenty-two (322) months. This term consists of a term of two hundred and sixty-two (262) months as to Counts 1 and 4 and a term of sixty (60) months as to Count 2, to be served consecutively with the term imposed at Counts 1 and 4.
>
> "Upon release from imprisonment, the defendant shall be on supervised release for a term of five (5) years."

App. at 30-31. This was the minimum possible sentence under the then-mandatory Sentencing Guidelines. In 2008 and again in 2011, after the crack guidelines were amended by the Sentencing Commission, Dillon's sentence was reduced, first to 270 months, and then to time served.[1] On November 10, 2011, Dillon was released in the Northern District of Texas and began his supervised release.

---

[1] On the effective date of the second set of retroactive amendments to the crack guidelines, Dillon had only 14 months left on his sentence. Because Dillon's new guideline range amounted to a 42-month reduction from his previous sentence, Dillon ended up serving approximately 28 months more than what was called for by his amended guideline sentence.

On the evening of December 5, 2011, after spending the day at a local shopping mall applying for jobs, Dillon called his cousin (and former co-conspirator) Jerron Lollis and asked him for a ride home. When Lollis arrived 45 minutes later, Dillon entered the car and immediately smelled marijuana, confirmed with Lollis that there was marijuana in the car, but remained in the vehicle, telling Lollis to "take me out of here; just take me home, man." On their way out of the mall's parking lot, the car was spotted and pulled over by Officer Fred Kemp, who called for backup. When Officer Kemp tapped on the window and Lollis rolled it down, the officer was "immediately hit by a really strong smell of unburned or fresh marijuana."

After backup arrived in the person of Officer Richard Hernandez, the situation escalated: Officer Kemp ordered Lollis and Dillon out of the car, Lollis then revved the engine and pulled away (with Officer Hernandez dangling from the window), and Officer Kemp discharged his weapon in an attempt to stop the vehicle. Once the car stopped, the officers arrested Lollis and Dillon and recovered over 65 pounds of marijuana from the vehicle. Lollis claimed sole responsibility for the drugs.

Following this incident, both Dillon and Lollis were charged with supervised-release violations. The Probation Office alleged that Dillon violated three conditions: (1) that he not commit another federal, state, or local crime; (2) that he not illegally possess a controlled substance; and (3) that he not associate with any persons involved in criminal activity or with any persons convicted of a felony unless granted permission to do so. After a hearing, the District Court found

5

that Dillon had not violated the first two conditions, but had violated the third, which constituted a Grade C violation. *See* U.S.S.G. § 7B1.1(a)(3).

The District Court then stated that under 18 U.S.C. § 3583(e)(3), "the Court may sentence [Dillon] to serve up to five years' imprisonment at Count 1, two years' imprisonment at Count 2, and three years' imprisonment at Count 4." App. at 180. The court also noted that under § 3584(a), it could impose these terms concurrently or consecutively. It further noted that under U.S.S.G. § 7B1.4(a), the guidelines-recommended sentence for Dillon's Grade C violation, given Dillon's criminal history category of II, was four to ten months.

Notwithstanding the guidelines recommendation, however, the District Court found that "a term of imprisonment within this range is insufficient to comply with the factors set forth in Title 18 of the United States Code, Section 3553(a)." App. at 181. Because Dillon violated the terms of his supervised release so soon after being released from prison; because he associated with his former co-conspirator, Jerron Lollis; because he did not try to exit Lollis's car after smelling marijuana; and because he did all this after spending 19 years in prison, which showed that Dillon had "learned little from [his] lengthy term," the District Court revoked Dillon's supervised release and sentenced him to reimprisonment:

> "Pursuant to the Sentencing Reform Act of 1984 it is the judgment of the Court that the Defendant Percy Dillon is hereby committed to

6

the custody of the Bureau of Prisons to be imprisoned for a term of 24 months, consisting of a term of one month at Count 1, a term of 11 months at Count 2, and a term of 12 months at Count 4, all such terms to be served consecutive to each other.

"Upon release from imprisonment, the Defendant shall be placed on supervised release for a term of 59 months at Count 1, 25 months at Count 3, and 48 months at Count 4, to be served concurrently."

App. at 182-83. Such a lengthy term of supervised release was necessary, in the District Court's view, due to Dillon's "poor compliance with [his] conditions of release." *Id.* at 182.

Dillon's timely notice of appeal to this Court followed.

II.

The District Court had jurisdiction at Dillon's supervised-release revocation hearing under 18 U.S.C. §§ 3231 and 3583(e). We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

Because Dillon never objected before the District Court on the grounds asserted here, we review for plain error. *See* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."). We may reverse a district

7

court's decision on plain error review only if we conclude that (1) there was an error; (2) the error was "plain," that is, "clear" or "obvious"; (3) the error "affect[s] substantial rights," which "in most cases" means that the error must have been prejudicial; and (4) the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732-36 (1993) (internal citations omitted).

## III.

Dillon argues that his original 1993 sentence included a single term of supervised release, not three concurrent terms, and that the District Court therefore committed plain error when it revoked his supervised release in 2012 and imposed three (consecutive) terms of imprisonment and three (concurrent) terms of supervised release. We agree.

## A.

In the Sentencing Reform Act of 1984, Congress eliminated most forms of parole in favor of supervised release, a form of post-confinement monitoring that is overseen by the sentencing court, rather than the Parole Commission. *See Johnson v. United States*, 529 U.S. 694, 696-97 (2000). The law authorizes a district court, when sentencing a defendant to a prison term for a felony or misdemeanor offense, to include a term of supervised release

8

as a part of the sentence. 18 U.S.C. § 3583(a) (1993).[2] Section 3583(b) outlines the maximum allowable terms of supervised release: five years for a Class A or Class B felony; three years for a Class C or Class D felony; and one year for a Class E felony or a misdemeanor.[3] *Id.* § 3583(b).

Upon a finding by a preponderance of the evidence that a defendant has violated the conditions of his supervised release, a district court may "revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised release without credit for time previously served on postrelease supervision, . . . except that a person whose term is revoked under this paragraph may not be required to serve more than 3 years in prison if the offense for which the person was convicted was a Class B felony, or more than 2 years in prison if such offense is a Class C or D felony." 18 U.S.C. § 3583(e)(3) (1993). The statute also

---

[2] Because post-revocation penalties are considered part of the punishment for the original offense, *Johnson v. United States*, 529 U.S. 694, 700-01 (2000), we apply 18 U.S.C §§ 3583 and 3553 as they read in March 1993, when Dillon committed his original offense.

[3] Count One was a Class B felony because it carried a maximum term of 40 years. *See* 21 U.S.C. § 841(b)(1)(A)(iii) (1993). Count Two was a Class D felony because it carried a maximum term of 5 years. *See* 18 U.S.C. § 924(c)(1) (1993). Count Four was a Class B felony because it carried a maximum term of 40 years. *See* 21 U.S.C. § 841(a)(1) (1993).

permits a district court to add an additional term of supervised release following a prison term imposed under § 3583(e)(3), so long as the sum of the two terms does not exceed the originally-imposed term of supervised release.[4]

At Dillon's November 1993 sentencing hearing, the District Court announced: "Upon release from imprisonment the defendant shall be placed on supervised release for a term of five years." App. at 39. The court's judgment, released a few days later, contained almost identical language: "Upon release from imprisonment, the defendant shall be on supervised release for a term of five (5) years." App. at 31. Dillon argues that this language (specifically, "a term") "plainly refers to only one term of supervised release" and that the District Court was without authority to impose three consecutive terms of reimprisonment and three concurrent terms of supervised release in 2012. Appellant's Br. at 29-30.

For support, Dillon relies on *United States v. Eskridge*, 445 F.3d 930 (7th Cir. 2006), in which the Seventh Circuit considered a 22-month sentence imposed following the defendant's third supervised-release violation. Although Eskridge had initially been sentenced to two concurrent terms

---

[4] In 1994, Congress added § 3583(h), which explicitly confers this power upon district courts. In *Johnson v. United States*, the Supreme Court held that § 3583(h) could not be applied retroactively to defendants (like Dillon) who committed their offenses prior to 1994, but also held that the pre-1994 statute could nevertheless be read to provide for the power. *See* 529 U.S. at 705-06.

10

of supervised release, after his first violation in 2002, the district judge sentenced him to 26 more months of supervised release but "did not indicate in the judgment order whether these were two (concurrent) terms or one term." *Id.* at 934. This mattered, explained Judge Posner, because "consecutive terms of imprisonment may be imposed upon revocation of concurrent terms of supervised release," and so "if in 2002 the district judge [had] actually imposed two terms of supervised release, he had two terms that he could revoke," which meant he could order Eskridge to serve consecutive prison terms without violating the 2-year maximum. *Id.* The court continued:

> "To resolve the issue of clerical error versus judicial error, we sent for the transcript of the sentencing hearing. There we discover that in imposing supervised release in the first revocation the judge stated: 'Because of the short term imposed in this matter the court is going to also continue you on supervised release for a term of 26 months.' *A term*. This was the sentence and it was accurately reflected in the written judgment . . . ."

445 F.3d at 935 (internal citation omitted). The court therefore vacated Eskridge's sentence and remanded the case for resentencing.

In *United States v. Snyder*, 635 F.3d 956 (7th Cir. 2011), the Seventh Circuit returned to this issue in a case involving a sex offender who had violated the terms of his supervised release. As in *Eskridge*, the judge at Snyder's

11

original sentencing hearing had announced that Snyder would serve "a term" of six years of supervised release following his 168 months in prison. *Id.* at 958. After Snyder violated the terms of his supervised release almost immediately, the district court revoked supervised release and sent Snyder back to prison for what it believed to be the statutory maximum: two years on each of his four convictions, to run consecutively. *Id.* at 959.

Because the district court announced this sentence without any mention of the applicable guidelines range, the Seventh Circuit vacated Snyder's sentence and remanded. But in doing so, the court also noted that based on the language used by the district judge in the sentencing order and transcript, Snyder had actually been sentenced only to a single term of supervised release, *id.* at 958 n.1, and the maximum term of reimprisonment to which he could be sentenced was only 24 months, *id.* at 960 n.4.

Here, the government argues that despite what it said, the District Court in 1993 actually *meant* to sentence Dillon to three concurrent terms of supervised release. Moreover, because it claims that the District Court was "obligated by law" to impose supervised release on both Counts One and

12

Four,[5] the government asks us to hold that "by operation of law," the District Court's 1993 sentence "actually involved two terms of supervised release: a five-year term at Count One and a concurrent four-year term at Count Four." Gov't Br. at 25-26.

This argument is flawed in two respects. First, the government never objected in 1993 to the District Court's imposition of "a term" of supervised release, nor did it cross-appeal and assert any error. As Judge Posner recognized in *Eskridge*, if a district court's order "accurately reflects the judge's decision, *however mistaken*, to impose just a single term [of supervised release], it cannot be corrected because none of the statutory provisions authorizing the sentencing judge to modify a sentence that he has imposed is applicable to such a case." 445 F.3d at 934 (emphasis added); *see also* Fed. R. Crim. P. 36 ("After giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission."); *Eskridge*, 445 F.3d at 934 ("If the failure of the judgment

---

[5] *See* 21 U.S.C. § 841(b)(1)(A) (1993) [Count One] ("Any sentence under this subparagraph shall, in the absence of [a prior conviction for a felony drug offense], impose a term of supervised release of at least 5 years in addition to such term of imprisonment . . . ."); *id.* § 841(b)(1)(B) [Count Four] ("Any sentence imposed under this subparagraph shall, in the absence of [a prior conviction for a felony drug offense], include a term of supervised release of at least 4 years in addition to such term of imprisonment . . . .").

13

order to state that the judge was imposing two (concurrent) terms of supervised release . . . was merely a clerical error—that is, if the court announced two terms but the clerk who typed the 2002 judgment included just one—then Rule 36 will allow correction even now.").

Second, even if Dillon's 1993 sentence could somehow be transmogrified "by operation of law," this would still fail to explain why the District Court in 2012 thought it could revoke three concurrent terms of supervised release instead of two. As the government admits, only Counts One and Four of the 1993 Superseding Indictment carried mandatory terms of supervised release. The government acknowledges that the 1993 oral and written judgments made no reference to Count Two, but claims that "the District Court's treatment of [Count Two] during the revocation hearing reflects that it originally intended to impose three separate and concurrent terms of supervised release." Gov't Br. at 26-27. But even if the District Court's actions in 2012 could give us any insight into what it had "intended" to do almost two decades earlier, the government never explains why we should consider those intentions relevant. *See Snyder*, 635 F.3d at 960 n.4 ("[E]ven if the court meant to sentence Snyder differently, it no longer has the authority to modify the original sentence to correct the error.").

"A defendant cannot be reimprisoned for violating the conditions of non-existent terms of supervised release." *Snyder*, 635 F.3d at 960 n.4. In 1993, when the District Court sentenced Dillon to "a term" of supervised release, it capped the number of supervised release terms it could revoke at any future proceeding at one. This conclusion is supported by the

14

plain text of § 3583(e)(3), which authorizes the court to "revoke *a term* of supervised release, and require the person to serve in prison all or part of *the term* of supervised release." 18 U.S.C. § 3583(e)(3) (1993) (emphases added).

We join the Court of Appeals for the Seventh Circuit and hold that where, as here, a district court's sentence includes "a term" of supervised release, the court may not sentence the defendant to multiple terms of reimprisonment and/or supervised release upon a subsequent revocation of supervised release. The District Court therefore erred when it sentenced Dillon to three consecutive terms of reimprisonment and three concurrent terms of supervised release.

## B.

Although the District Court erred at Dillon's revocation hearing by sentencing Dillon to three consecutive terms of reimprisonment and three concurrent terms of supervised release, Dillon never objected before the District Court, and so we must review for plain error. We may reverse a district court's decision on plain error review only if we conclude that (1) there was an error; (2) the error was "plain," that is, "clear" or "obvious"; (3) the error "affect[s] substantial rights," which "in most cases" means that the error must have been prejudicial; and (4) the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732-36 (1993).

15

We will exercise our discretion to correct the District Court's erroneous imposition of multiple terms of reimprisonment and supervised release. The District Court's error was "plain" because the language of the 1993 sentence – "a term of five years" – was unambiguous. *See, e.g., United States v. Moore*, 375 F.3d 259, 265 (3d Cir. 2004) (finding plain error where district court admitted irrelevant and prejudicial evidence despite "clear and unambiguous" command of Fed. R. Evid. 404(b)); *United States v. Knobloch*, 131 F.3d 366, 373 (3d Cir. 1997) (finding plain error where district court ignored "unambiguous directive" of guidelines application note); *United States v. Leonard*, 157 F.3d 343, 346 (5th Cir. 1998) (finding plain error where district court failed to apply "clear and unambiguous" sentencing guideline language).

The District Court's erroneous multiple-terms sentence was prejudicial to Dillon due to its implications for a hypothetical second revocation of his supervised release: a judge at such a hearing may see that Dillon was sentenced to multiple terms at his first revocation and presume that he may also impose multiple terms. Because the type of error made by the District Court is one that "may result in arbitrary differences in sentencing similarly situated defendants," we will grant Dillon relief "in order to maintain the fairness, integrity, and public reputation of judicial proceedings." *United States v. Vazquez-Lebron*, 582 F.3d 443, 447 (3d Cir. 2009).

16

IV.

For the reasons set forth above, we will vacate Dillon's sentence and remand to the District Court for resentencing.[6]

---

[6] In the alternative, Dillon claims that the District Court's sentence was procedurally unreasonable because it failed to consider his approximately 28 months of over-incarceration due to his inability to obtain the full benefit of the retroactive crack amendments. Although we need not decide this question today, the District Court should consider Dillon's over-incarceration upon resentencing.

17