In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-1921

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

STEVE BRIGGINS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:17-cr-00243-1 — **Elaine E. Bucklo**, *Judge.*

ARGUED JANUARY 24, 2019 — DECIDED MARCH 6, 2019

Before MANION, BRENNAN, and SCUDDER, *Circuit Judges*.

SCUDDER, *Circuit Judge*. In 2017 Steve Briggins was convicted of robbing multiple banks over several months. This was not Briggins's first foray into bank robbery. Eighteen years earlier, in 1999, Briggins was convicted of and sentenced for ten bank robberies he committed over a span of a few months. When the district court sentenced Briggins for the 2017 robberies, it accounted for the 1999 robberies in calculating his criminal history points under the Sentencing

Guidelines. Briggins now appeals, contending that the district court, when determining his advisory sentencing range, improperly determined his criminal history category by imposing too many criminal history points for the 1999 robberies. Seeing no error, we affirm.

**I**

Briggins pleaded guilty in 2017 to committing multiple bank robberies. At sentencing a primary focus became Briggins's criminal history and, more specifically, how many criminal history points should be assessed for the ten bank robberies he was convicted of in 1999 and for which he was sentenced to 84 months' imprisonment. The number of points to be added for the 1999 robberies depended on whether the prior 84-month term reflected one sentence (for all ten robberies) or multiple concurrent sentences (for the ten separate robberies). Briggins urged the former—if the 84-month term reflected one sentence, it would yield fewer criminal history points and thus a lower advisory guidelines range.

The district court's determination of Briggins's criminal history points tracked the Sentencing Guidelines analysis offered by the probation office. In its presentence investigation report, the probation office concluded that Briggins received ten concurrent sentences—one for each of the ten bank robberies. So, too, did the probation office recognize that the calculation of Briggins's criminal history points needed to account for the threefold reality that he was charged with all ten robberies in the same indictment, pleaded guilty to each of those robberies in the same proceeding, and faced sentencing for all ten on the same day. All of this had ramifications for the proper criminal history calculation.

In the end, the probation office recommended that Briggins receive six criminal history points for the 1999 bank robberies. These six points captured all ten robberies and came from an application of two provisions within § 4A1.1 of the guidelines. The first three of those points came from § 4A1.1(a), which requires sentencing courts to "[a]dd 3 points for each prior sentence of imprisonment exceeding one year and one month." And the other three points came from a provision, § 4A1.1(e), that applies where, as here, a defendant is convicted of multiple offenses charged in the same indictment or receives multiple sentences on the same day. In this way, § 4A1.1(e) accounts for the circumstance of multiple convictions and sentences.

We can put the point in even plainer terms. A defendant sentenced to more than 13 months' imprisonment following a felony conviction ordinarily receives three criminal history points for that offense at a later sentencing. See U.S.S.G. § 4A1.1(a). By this logic, it may seem that a defendant like Briggins convicted of and sentenced for ten separate robberies should receive 30 criminal history points—three for each conviction. The guidelines do not work that way, though, in situations like the ones present here. Where the prior sentences "resulted from offenses contained in the same charging instrument" or were "imposed on the same day," the Sentencing Commission limited the number of criminal history points assigned to those sentences. *Id.* § 4A1.2(a)(2). The first sentence still receives three points (consistent with the ordinary rule), but the remaining sentences are subject to a capping rule: § 4A1.1(e) assigns one criminal history point for each additional sentence resulting from a conviction of a crime of violence but limits the maximum number of additional points to three.

The probation office applied this capping rule when calculating Briggins's criminal history points here. It began with the ten sentences Briggins received for the ten 1999 robberies and assigned three points to the first of those sentences under § 4A1.1(a) because the sentence exceeded 13 months. From there the probation office recognized that, because the ten sentences came from the same indictment and were imposed on the same day, the limitations of § 4A1.1(e) applied. Applying § 4A1.1(e) meant that only three additional points were allowed for Briggins's remaining nine robberies. The math from there was simple: Briggins received a total of six criminal history points for the ten 1999 robberies.

At the sentencing hearing for the 2017 robberies, the district court agreed with and adopted the probation office's analysis of Briggins's criminal history. The resulting advisory guidelines range for Briggins's 2017 bank robberies was 77 to 96 months' imprisonment. The district court imposed a sentence of 96 months.

## II

On appeal Briggins renews his challenge to the district court's calculation of the criminal history points assigned to his 1999 bank robberies. He does so by attacking a key factual premise upon which the district court based its determination that the prior robberies warranted a total of six criminal history points. As Briggins sees the 1999 proceeding, he received not ten concurrent sentences, but rather one sentence of 84 months for all ten robberies. On this view, he contends he should have received only three criminal history points for the single term of 84 months he received for the 1999 robberies, and thus there was no need for the district court to ever get into how the guidelines treat multiple sentences.

Resolving whether Briggins received multiple concurrent sentences or one sentence for his ten bank robberies requires us to review the 1999 sentencing hearing in some detail. The beginning point is recognizing that Briggins pleaded guilty to committing ten separate bank robberies, each of which had been charged as a separate count in the underlying indictment. At the 1999 sentencing hearing, the district court stated that it was sentencing Briggins "to a term of 84 months." In doing so, the court emphasized that Briggins deserved to be punished for each robbery—he should not, as the sentencing judge put it, receive any "group discounts" for having committed ten separate robberies. The district court's written judgment reflected that Briggins pleaded guilty to ten counts that resulted in "a total term of 84 months." Nowhere in the written judgment did the court indicate whether the 84-month term reflected concurrent sentences.

Briggins latches onto the district court's use of the phrase "a term" of imprisonment to argue that he received a single, lump-sum term of 84 months for the ten robberies. He does not dispute that he pleaded guilty to ten separate robberies, but rather underscores that he was sentenced to "a term" of 84 months—a *single* term, not multiple terms or concurrent terms. And this single sentence, Briggins continues, is wholly accounted for by the three criminal history points added under § 4A1.1(a); there was no basis for assigning additional criminal history points under § 4A1.1(e) or any other provision of the guidelines. The upshot of Briggins's argument is that it was not even necessary for the district court to reach § 4A1.1(e) because multiple sentences were not in play in the first place.

We disagree. Briggins's insistence that he received only one sentence because the district court announced "a term" of imprisonment ignores the substance and full context of what transpired at his 1999 sentencing hearing. The transcript shows that the district court intended to punish each robbery separately, for there is no other way to understand the sentencing judge's comments that Briggins was not entitled to "any type of group discounts" or "a two-for-one sale or a ten-for-one sale."

The district judge made other statements at sentencing to drive home that Briggins deserved to be punished for each of the ten robberies. At one point, for example, the judge explained that, if Briggins had committed just one bank robbery, he would "probably be looking at three to five years easily," and that "any judge could sentence [him] to 30 years and say, well, it's three years for each of the bank robberies." The district judge further observed that, even if he sentenced Briggins to just "one year for every one of the bank robberies," he would face a total of ten years. But the court was quick to recognize that a sentence along those lines would be well outside the then-mandatory guidelines range of 63 to 78 months. So the district court instead applied an upward departure, reasoning that the ten robberies conducted over a short period of time presented an "unusual circumstance" that was not adequately taken into consideration by the guidelines. The 1999 sentencing ended with the district court imposing a sentence of 84 months.

A broader point deserves underscoring. Accepting Briggins's position would require us to conclude that the district court sentenced him to 84 months for one of the ten 1999 bank robberies but to no time for the other nine. But any

view like that neither accounts for what the district judge said at sentencing—that Briggins would not receive a break because he committed multiple bank robberies—nor the reality that the court was obligated to sentence him on each of the ten separate bank robberies to which he pleaded guilty. We also cannot overlook that the district court imposed a special assessment of $100 for each of the ten robberies for a total of $1,000—yet another indicator that the district judge understood the ten robberies as resulting in separate convictions warranting separate sentences. The only other interpretation, which makes even less sense, is that the 84-month sentence reflected the sum total of ten consecutive sentences of 8.4 months each. Not only would a sentence like that—less than one year for a bank robbery—bear little relationship to the applicable guidelines range, but it would also require us to assume the district judge (who uttered not a word about consecutive sentences) intended to impose ten small but consecutive sentences.

Our conclusion that the district court imposed ten concurrent sentences for the 1999 robberies aligns squarely with the presumption that sentences imposed in a multiple-count case run concurrently with one another. See U.S.S.G. § 5G1.2(c) (explaining that "[i]f the sentence imposed on the count carrying the highest statutory maximum is adequate to achieve the total punishment, then the sentences on all counts shall run concurrently"). Indeed, the Sentencing Commission's accompanying commentary (in effect at the time of the 1999 sentencing and now) clarifies that, in a multiple-count case, the total punishment is to be imposed on each count and the sentences on all counts are to run concurrently. See *id.* § 5G1.2 & cmt; see also *id.* § 5G1.2 & cmt. (effective Nov. 1, 1998). Congress incorporated this same

presumption of concurrence into the statutory provision governing the imposition of multiple sentences for a defendant convicted of a federal offense. See 18 U.S.C. § 3584(a).

We decline to interpret Briggins's 1999 sentence in a way that contravenes not only this presumption of concurrence, but also the sentencing judge's clear statements that he intended to hold Briggins accountable for each robbery. The most accurate reading of Briggins's 1999 sentence—the reading fairest to the record—is that "a term of 84 months" reflected multiple concurrent sentences.

Briggins urges a contrary conclusion by pointing to prior decisions where courts have concluded that "a term" refers to one sentence or, at the very least, creates enough ambiguity about what sentence a defendant received to warrant resentencing. In *United States v. Eskridge*, for example, the question was whether the district court had imposed one term or two concurrent terms of supervised release for the defendant's two convictions. 445 F.3d 930, 934 (7th Cir. 2006). After examining the sentencing transcript, we held that the defendant was entitled to resentencing for supervised release violations because the district judge, in sentencing the defendant to "a term of 26 months," in no way clarified (in the judgment or otherwise) whether he had sentenced the defendant to one or two terms of supervised release. See *id.* at 935. And we added that "if the order accurately reflects the judge's decision, however mistaken, to impose just a single term, it cannot be corrected." *Id.* at 934.

The circumstances here are different. The statements the district judge made immediately before sentencing Briggins for the 1999 robberies do not leave room for an interpretation

that the court may have decided—however mistakenly—to impose a single term of imprisonment. To the contrary, the district judge's statements made clear that he intended to hold Briggins accountable for each of the ten robbery convictions. At the time, moreover, the guidelines required the court to sentence Briggins on each count of conviction, with the presumption that such sentences would run concurrently.

On this record, we conclude that the district court in 1999 imposed multiple sentences for Briggins's ten robbery convictions. At Briggins's sentencing for the 2017 convictions, the district court thus properly assessed six criminal history points for Briggins's 1999 sentences—three criminal history points under U.S.S.G. § 4A1.1(a) for one sentence, and three additional points for the remaining nine sentences under U.S.S.G. § 4A1.1(e).

Accordingly, we AFFIRM.