NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 16-1853 & 16-1884
_____

UNITED STATES OF AMERICA

v.

WESLY DIEUDONNE,
     Appellant in case no. 16-1853


UNITED STATES OF AMERICA

v.

RENAULD MEDARD,
     Appellant in case no. 16-1884
_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Nos. 3-13-cr-00759-002; 3-13-cr-00759-001)
District Judge: Honorable Anne E. Thompson
_____

Submitted Under Third Circuit LAR 34.1(a)
January 24, 2017
_____

Before: CHAGARES, RESTREPO and ROTH, *Circuit Judges*.

(Filed:  June 6, 2017)

_____

OPINION[*]

_____

RESTREPO, *Circuit Judge*.

Appellants Renauld Medard and Wesly Dieudonne appeal their convictions for wire fraud and conspiracy to commit wire fraud. As to Medard, we will affirm. As to Dieudonne, we will affirm in part, vacate in part and remand.

**I**

Medard and Dieudonne conspired to steal and return over $260,000 in merchandise from Home Depot stores in multiple states. They employed a scheme known as "double-dipping," which involved multiple conspirators and operated as follows:

First, a conspirator bought large, expensive items from a Home Depot store. He then re-entered the store and placed a second set of the same items into a shopping cart. A conspirator took the second cart to a different cash register, sometimes in another part of the store, such as the garden center. He presented the receipt from the first purchase and claimed to have already paid for the items in the second cart. He "explained" that he forgot to buy one small item, such as a bag of fertilizer. He paid for the small item, and left with the second cart of stolen goods. Finally, the conspirators returned all of the

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

items from both the first and second carts—one round with a receipt and one round without a receipt, for store credit at a different store.

The Government's evidence against Medard and Dieudonne included surveillance videos and electronic records of purchases and returns. Notably, Medard and Dieudonne repeatedly provided their own drivers' licenses to make returns, and Home Depot retained this data. In addition, Medard made some purchases using his own credit cards.

Medard and Dieudonne also gave partially inculpatory statements. Medard denied any involvement in the scheme, and denied recognizing a co-conspirator, Gary Cabral, despite the fact that the two men were repeatedly seen together in surveillance videos. Dieudonne gave a statement admitting that he drove Cabral to Home Depot stores in multiple states and that he returned items for Cabral. Dieudonne stated that Cabral paid him fifty dollars per return.

After a jury trial, Medard and Dieudonne were convicted of wire fraud, 18 U.S.C. § 1343, and conspiracy to commit wire fraud, 18 U.S.C. § 1349. Medard was sentenced to 30 months' incarceration and 3 years' supervised release. Dieudonne was sentenced to 28 months' incarceration and 3 years' supervised release. As noted at sentencing, Dieudonne is a deportable immigrant from Haiti. At sentencing, however, no one mentioned the fact that deportable immigrants are presumptively exempt from the discretionary imposition of supervised release. U.S.S.G. § 5D1.1(c).

**II**[1]

Medard and Dieudonne raise a combined four claims.  We address each in turn.

**A**

First, both Medard and Dieudonne assert that the District Court erred by declining to redact a copy of the indictment before providing it to the deliberating jury.

Whether to provide a copy of the indictment to the jury is "within the discretion of the [d]istrict [j]udge, subject to a limiting instruction that the indictment does not constitute evidence, but is an accusation only." *United States v. Todaro*, 448 F.2d 64, 66 (3d Cir. 1971).  If the district court provides the indictment, it has the power to redact superfluous language that unfairly prejudices the defendant.  *United States v. Pungitore*, 910 F.2d 1084, 1142 n.83 (3d Cir. 1990) (citation omitted).  We review for abuse of discretion a district court's decision whether to redact an indictment provided to the jury.  *Cf. Todaro*, 448 F.2d at 66.

Medard and Dieudonne argue that the District Court should have redacted the indictment as to one allegation—that the "double-dipping" conspiracy operated in Connecticut and Maryland.  In support of this claim, Medard and Dieudonne assert that there was no evidence presented at trial that they committed fraud in those two states.  This is factually incorrect.  To the contrary, the Government entered into evidence a spreadsheet of all the returns that Medard and Dieudonne made using their own drivers' licenses.  This spreadsheet included returns in both Connecticut and Maryland.  Thus, the

___

[1]  The District Court had jurisdiction under 18 U.S.C. § 3231.  We have jurisdiction over these timely appeals under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

4

District Court did not abuse its discretion in declining to redact the references to those two states.

**B**

Second, Medard appeals the District Court's denial of his motion to vacate his conviction as against the weight of the evidence.

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "[W]hen a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." *United States v. Silveus*, 542 F.3d 993, 1004 (3d Cir. 2008) (citation omitted). A district court may vacate a judgment and "order a new trial only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *Id.* at 1004-05 (quotation marks and citation omitted). We review the denial of a Rule 33 motion for abuse of discretion. *Id.* at 1005.

Medard argues that his conviction is against the weight of the evidence because the Government did not establish that his participation in the scheme to defraud was "knowing and willful." *United States v. Andrews*, 681 F.3d 509, 528 (3d Cir. 2012). We disagree. A reasonable jury could have inferred Medard's knowledge and willfulness from the circumstantial evidence. *See United States v. Pearlstein*, 576 F.2d 531, 541 (3d Cir. 1978). Medard engaged in transactions that fit the pattern of "double-dipping." Indeed, he did so repeatedly, as part of a total fraud of over $260,000. This was

5

evidenced by surveillance videos and voluminous electronic records. In addition, Medard gave a false statement, in which he denied recognizing a co-conspirator, Cabral, with whom he was seen in multiple surveillance videos. Thus, the District Court did not abuse its discretion in denying Medard's Rule 33 motion.

## C

Third, Medard raises a related challenge to the District Court's jury instructions on conspiracy to commit wire fraud. Medard claims that the District Court failed to emphasize the Government's burden to prove beyond a reasonable doubt, his knowing participation in the "double-dipping" scheme. We exercise plenary review over "whether the jury instructions stated the proper legal standard." *United States v. Flores*, 454 F.3d 149, 156 (3d Cir. 2006) (citation omitted). Upon review of the District Court's jury instructions, we conclude that there was no instructional error. Contrary to Medard's assertions, the District Court properly instructed the jury on, *inter alia*, the Government's burden of proof, knowing participation, specific intent to defraud, and mere presence. *Cf. Andrews*, 681 F.3d at 528.

## D

Finally, Dieudonne asserts that the District Court committed a procedural sentencing error under Section 5D1.1(c) of the Sentencing Guidelines by sentencing him to a term of supervised release without any explanation. We will vacate the term of supervised release imposed by the District Court.

Under Section 5D1.1(c), deportable immigrants are presumptively exempt from the discretionary imposition of supervised release. The Guideline states: "The court

ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment." U.S.S.G. § 5D1.1(c). The commentary further provides:

> In a case in which the defendant is a deportable alien specified in subsection (c) and supervised release is not required by statute, the court ordinarily should not impose a term of supervised release. Unless such a defendant legally returns to the United States, supervised release is unnecessary. If such a defendant illegally returns to the United States, the need to afford adequate deterrence and protect the public ordinarily is adequately served by a new prosecution. *The court should, however, consider imposing a term of supervised release on such a defendant if the court determines it would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case.*

U.S.S.G. § 5D1.1(c), cmt. n.5 (emphasis added).

We review Dieudonne's Section 5D1.1(c) claim for "plain error" as he failed to object in the District Court. Fed. R. Crim. P. 52(b). The plain error test requires (1) an error; (2) that is "clear or obvious"; (3) "affected the defendant's substantial rights" and (4) "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Molina-Martinez v. United States*, 136 S.Ct. 1338, 1343 (2016) (quoting *United States v. Olano*, 507 U.S. 725, 734, 736 (1993)).

The Government agrees that the first three prongs of the plain error test are met in Dieudonne's case. Specifically, the Government agrees that the District Court committed a procedural error by imposing a term of supervised release on Dieudonne "without any explanation as to why it was appropriate under the facts of the case," and that the error

7

was plain. Brief for Appellee 22.[2] The Government also agrees that the District Court "likely would not have imposed a term of supervised release on [Dieudonne] if the Court had been alerted" to Section 5D1.1(c). *Id.* at 24. Nevertheless, the Government opposes relief on the fourth prong of plain error review. We confine our analysis to this issue.

On the fourth prong of the plain error test, our analysis is "case-specific and fact-intensive." *Puckett v. United States*, 556 U.S. 129, 142 (2009). Having considered the facts of Dieudonne's case, we exercise our "broad discretion" to recognize the error. *Molina-Martinez*, 136 S.Ct. at 1348. We do so for two equally sufficient reasons.

First, a district court's explanation for imposing a term of supervised release on a deportable immigrant "promote[s] the perception of fair sentencing." *Gall v. United States*, 552 U.S. 38, 50 (2007). As the Supreme Court has observed, "[j]udicial decisions are reasoned decisions. Confidence in a judge's use of reason underlies the public's trust in the judicial institution. A public statement of those reasons helps provide the public with the assurance that creates that trust." *Rita v. United States*, 551 U.S. 338, 356 (2007). In Dieudonne's case, the lack of any explanation under Section 5D1.1(c) renders remand appropriate. *See United States v. Cabrera*, 811 F.3d 801, 814 (6th Cir. 2016) (exercising discretion to remand a procedurally unreasonable sentence on the fourth prong of plain error in light of *Gall* and *Rita*).

Second, "there are times when a discussion of procedural error will necessarily raise questions about the substantive reasonableness of a sentence." *United States v.*

---

[2] As the District Court did not provide "any explanation" for imposing a term of supervised release, we need not address the parameters of an adequate explanation under Section 5D1.1(c).

*Olhovsky*, 562 F.3d 530, 553 (3d Cir. 2009) (quoting *United States v. Levinson*, 543 F.3d 190, 195 (3d Cir. 2008)).  This is such a case.  Dieudonne's term of supervised release will not be "automatically extinguished by deportation."  *United States v. Williams*, 369 F.3d 250, 253 (3d Cir. 2004).  On the facts of his case, "the type of error made by the District Court is one that 'may result in arbitrary differences in sentencing similarly situated'" immigrant defendants, thereby implicating "the fairness, integrity, and public reputation of judicial proceedings."  *United States v. Dillon*, 725 F.3d 362, 369 (3d Cir. 2013) (quoting *United States v. Vazquez-Lebron*, 582 F.3d 443, 447 (3d Cir. 2009)).

Thus, for each of these reasons, we will remand for the limited purpose of curing the undisputed procedural error.  *See United States v. Mateo-Medina*, 845 F.3d 546, 550 (3d Cir. 2017).

### III

As to Medard, we will affirm the judgment of the District Court.  As to Dieudonne, we will vacate the term of supervised release imposed by the District Court, affirm the judgment in all other respects, and remand for further proceedings consistent with this opinion.

9