<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**July 3, 2018**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

No. 17-2124

MANUEL CHAVEZ-MORALES,

    Defendant - Appellant.
_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 2:16-CR-04013-WJ-1)**
_____

John V. Butcher, Assistant Federal Public Defender (Michael A. Keefe, Assistant Federal Public Defender on the briefs), Albuquerque, New Mexico, for Defendant – Appellant.

Paul J. Mysliwiec, Assistant United States Attorney (James D. Tierney, Acting United States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff – Appellee.
_____

Before **MATHESON**, **McKAY**, and **McHUGH**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.
_____

Manuel Chavez-Morales appeared before the district court following his fifth conviction for an illegal reentry offense. At sentencing, Mr. Chavez-Morales argued that higher wages in the United States motivated his decision to illegally reenter the

United States. Focusing heavily on Mr. Chavez-Morales's criminal history and noting that none of the earlier sentences deterred Mr. Chavez-Morales from reoffending, the district court imposed an upward variant sentence of thirty-six months' imprisonment. The district court also imposed a three-year term of supervised release.[1]

On appeal, Mr. Chavez-Morales challenges the procedural reasonableness of his term of imprisonment. Specifically, he contends the district court did not meaningfully consider his argument that economic opportunities motivated his decision to illegally reenter the United States and thereby mitigated the seriousness of his offense. Mr. Chavez-Morales separately contends the district court committed plain error by imposing a term of supervised release without acknowledging or considering United States Sentencing Guidelines Manual (U.S.S.G.) § 5D1.1(c), which states a court "ordinarily" should not impose a term of supervised release when "the defendant is a deportable alien who likely will be deported after imprisonment."

We affirm the district court's judgment. As to Mr. Chavez-Morales's term of imprisonment, the transcript of the sentencing hearing establishes that, on three occasions, the district court addressed Mr. Chavez-Morales's economic motivation argument. As to the imposition of a term of supervised release, while the district

---

[1] The term of supervised release was, in fact, "unsupervised with mandatory and standard conditions" and the special condition that Mr. Chavez-Morales "not illegally re-enter the United States." ROA Vol. 3 at 30. Although Mr. Chavez-Morales was not subject to supervision, for ease of reference, we refer to the term as a term of supervised release.

court erred by not acknowledging and considering U.S.S.G. § 5D1.1(c), Mr. Chavez-Morales has not carried his burden on the third prong of the plain error analysis.

## I.    BACKGROUND

### A.    *Mr. Chavez-Morales's History, Characteristics, & Offense Conduct*

Mr. Chavez-Morales, age fifty-six at the time of his most recent offense, is a citizen of Mexico. As a result of his family's financial struggles, Mr. Chavez-Morales entered the work force at a young age. By the 1980s, Mr. Chavez-Morales lived in the United States. According to records obtained by probation services, Mr. Chavez-Morales was the subject of an order of removal issued in 1986. Whether the order of removal was executed is not clear, but Mr. Chavez-Morales was present in the United States in the mid and late 1990s, as is evident by four Colorado convictions. By January 2000, however, Mr. Chavez-Morales had returned to Mexico.

On January 30, 2000, Mr. Chavez-Morales was detained when trying to enter the United States with fifty-three pounds of marijuana. He was deported in August 2000. In June 2002, Mr. Chavez-Morales returned to the United States, resulting in a conviction for reentry of a deported alien previously convicted of an aggravated felony, for which he incurred a sentence of twenty-four months' imprisonment, followed by three years' unsupervised release. Mr. Chavez-Morales was deported in March 2004. In December 2006, Mr. Chavez-Morales attempted to cross into the United States, presenting fraudulent documents to Border Patrol agents at a port of entry. Mr. Chavez-Morales pleaded guilty to the offense of illegal reentry and

3

incurred a sentence of thirty-seven months' imprisonment, followed by two years' unsupervised release. Mr. Chavez-Morales was deported in September 2009. In June 2011, Border Patrol agents found Mr. Chavez-Morales in the United States, which resulted in Mr. Chavez-Morales's third illegal reentry conviction, for which he incurred a sentence of twenty months' imprisonment. Mr. Chavez-Morales was deported in November 2012. In March 2015, Border Patrol agents, once again, found Mr. Chavez-Morales in the United States, leading to Mr. Chavez-Morales's fourth illegal reentry conviction, for which he incurred a sentence of eighteen months' imprisonment.[2] Mr. Chavez-Morales was deported on July 13, 2016. On August 19, 2016, roughly one month after being deported, Mr. Chavez-Morales was found in the United States, leading to the reentry of a removed alien conviction underlying the present appeal.

## B.    *Plea & Sentencing Proceedings*

Mr. Chavez-Morales and the government negotiated a fast-track plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) and U.S.S.G. § 5K3.1. The fast-track plea agreement estimated a Sentencing Guidelines range of nine to fifteen months and, if accepted by the district court, would have obligated the court to impose a within-Guidelines sentence. Focusing on Mr. Chavez-Morales's history of reentry offenses and the need to impose a sentence that would satisfy the

---

[2] In total, Mr. Chavez-Morales's four prior illegal reentry convictions resulted in sentences totaling ninety-nine months' imprisonment and in Mr. Chavez-Morales serving, seven years, two months, and eleven days in prison or immigration detention awaiting deportation.

18 U.S.C. § 3553(a) factors, including adequately deterring Mr. Chavez-Morales, the district court rejected the fast-track plea agreement. The district court indicated, however, that if Mr. Chavez-Morales entered into a non-fast-track plea agreement, a within-Guidelines sentence would likely satisfy the § 3553(a) factors.[3] But, a month after rejecting the fast-track plea agreement, the district court informed the parties that even if Mr. Chavez-Morales entered into a non-fast-track plea agreement with a Guidelines range of twenty-one to twenty-seven months' imprisonment, the district court might vary upwards. The district court granted Mr. Chavez-Morales's motion to formally withdraw the guilty plea he entered pursuant to the fast-track plea agreement. Thereafter, a grand jury indicted Mr. Chavez-Morales on one count of illegal reentry by a removed alien after deportation subsequent to a conviction for an aggravated felony, in violation of 8 U.S.C. §§ 1326(a), (b). Mr. Chavez-Morales then entered a straight-up guilty plea, without a written plea agreement.

Based on a total offense level of ten and a criminal history category of V, a presentence investigation report ("PSR") established a Guidelines range of twenty-one to twenty-seven months' imprisonment. *See* U.S.S.G. ch. 5 pt. A (sentencing table). Relying on Mr. Chavez-Morales's 8 U.S.C. §§ 1326(a)(1), (b)(2) offense being a Class C felony, the PSR established a Guidelines range for supervised release of one to three years. However, the PSR noted that "[p]ursuant to U.S.S.G.

---

[3] Under U.S.S.G. § 5K3.1, a defendant who enters into a fast-track plea agreement may receive up to a four-level reduction to his offense level. Under the negotiated fast-track plea agreement, Mr. Chavez-Morales was to receive the full four-level reduction so long as he had not previously sustained a conviction for a serious violent felony and did not have a criminal history category of VI.

5

§ 5D1.1(c), the court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment." ROA Vol. 2 at 29. Neither the Government nor Mr. Chavez-Morales objected to the Guidelines calculations in the PSR, and the district court adopted the factual findings and Guidelines calculations set out in the PSR.

The government advocated for an upward variant sentence of thirty-eight months' imprisonment, arguing that Mr. Chavez-Morales's longest previous sentence of thirty-seven months did not adequately deter him from reentering the United States. Mr. Chavez-Morales argued for a within-Guidelines sentence, highlighting his good work ethic while in detention awaiting sentencing, his plan to open a taqueria in Mexico after deportation, and his economic motivation for illegally reentering the United States. When Mr. Chavez-Morales's counsel compared the wages Mr. Chavez-Morales could earn in Mexico to the hourly wages in the United States, the district court interjected and the following colloquy occurred:

> [COUNSEL:] . . . He came back here every time, Your Honor, to have opportunities. I think I've set forth in the Sentencing Memorandum the amount of money he was making when he worked in Mexico, something like $7 a day, and he can come over here and make in the range of $15 an hour doing the same kind of work.
> THE COURT: How much is he making in prison?
> [COUNSEL]: Nothing.
> THE COURT: Well, you get a little bit.
> [COUNSEL]: A dollar a day, or whatever it is, yes.
> THE COURT: It's less than what he can make in Mexico; is that right?
> [COUNSEL]: Yes. The Court is right, over the last 15 years he's spent 8 years, more than half of that, locked up. So again, this seems to be a

part of—it should become very clear. What's very clear to all of us should become very clear to Mr. Chavez-Morales, and we hope that it does.

ROA Vol. 3 at 19–20.

The district court commenced announcing its sentence by reciting the 18 U.S.C. § 3553(a) factors, placing emphasis on the need to promote respect for the law and the need to adequately deter Mr. Chavez-Morales. *See* 18 U.S.C. § 3553(a)(2)(A), (B). In discussing the need to promote respect for the law, the district court stated:

> Now, to promote respect for the law. You can't help but look at this Presentence Report and come to the conclusion that the Defendant has no respect for the laws of the United States. I mean, I'm going to cite the fact that in the prior re-entry case, he was deported to Mexico on July the 13th, 2016, and that's referenced in Paragraph 29 of this Presentence Report where he was given 18 months custody, and then he was arrested again in the United States on August the 19th, 2016. So that's just a little more than one month after he's deported, he is arrested on this matter.
>
> Now, in the second Sentencing Memorandum, [counsel for Mr. Chavez-Morales] *talked about the wages and the money that he can make here in the United States compared to what he can make in Mexico, but obviously to me he didn't really give it a shot in Mexico, because he was deported on July 13, 2016, and he's arrested within a little more than 30 days here. So that just tends to ring hollow and just comes back to the point that he didn't really try to make a go of it there.*

ROA Vol. 3 at 25–26 (emphasis added). At this point, counsel for Mr. Chavez-Morales interjected, stating that "the incentive was so strong to come back based on what he knew he could earn. I don't think things had changed that much in Mexico [during his last prison sentence]." *Id.* at 26. To which, the district court responded:

> I mean, I get that. I understand that wages in general are lower. But then you come back to, as much time as he's served in prison in the United States, he could be making more if he was living and working in Mexico. Other than he gets a small inmate account at the detention facility, they're not paying in detention what he could be earning in Mexico. So, again, it

7

comes back as a complete and total lack of respect for the laws of the United States.

*Id.* The district court then discussed specific deterrence, noting that none of Mr. Chavez-Morales's four prior sentences deterred him from reentering the United States. In discussing the need for specific deterrence, the district court harkened back to its earlier conclusion that Mr. Chavez-Morales's conduct evidenced a lack of respect for the laws of the United States. Mr. Chavez-Morales's counsel interjected again, and the following interchange occurred:

> [COUNSEL]: Your Honor, if I could just say, on the lack of respect for the law, I would just say, I don't think—on paper, clearly it appears total lack of respect for the law. But it's not a situation where I think Mr. Chavez-Morales is thumbing his nose and saying, hey—I don't think that's the thought process that goes into this.
> I think the incentive is to come back to the United States, and again, I think it is more of an economic driven decision than it is sort of, you know, I don't care what their laws are. . . .
> So I understand why the Court would say that. It makes sense in terms of the way you look at things on paper. I'm just saying, in terms of knowing Mr. Chavez-Morales over these past several months and working with him, I don't think that's really his attitude.
> THE COURT: Well, I'll accept your representation that he doesn't have a subjective intent that would indicate a lack of respect, but if you look at his conduct objectively, it clearly would suggest a lack of respect if for no other reason than that after being told you're not going to be authorized to come here legally, you know, he's back in the United States a little over 30 days after he's deported on the previous re-entry conviction. And again, I could understand it if maybe that was the first go-around, but again, this is—is it the fourth or the fifth re-entry? This is the fifth re-entry conviction.
> So, you know, you get at least from a sentencing judge's standpoint, you get to a point where you say, enough is enough. And I don't know what else to do except impose a sentence that, again, satisfies the goals of sentencing, and is sufficient but not greater than necessary to satisfy those goals.

*Id.* at 28–29.

8

The district court then announced its sentence. Although inclined to impose a 48-month sentence, the district court credited Mr. Chavez-Morales's good behavior and work ethic while awaiting sentencing and settled on a sentence of thirty-six months' imprisonment. On the matter of supervised release, the district court stated:

> After service of the sentence, the Defendant is placed on supervised release for a term of three years. The term is unsupervised with mandatory and standard conditions, and the following special condition. The Defendant shall not illegally re-enter the United States. And I hope this time around the Defendant will listen to what I'm telling him, and listen to what his lawyer told him. You will never, ever be authorized to come to the United States legally. So unless you want to essentially spend the rest of your life sitting in a U.S. prison cell, I strongly recommend that after you serve this sentence and you're deported, you never return to the United States.

*Id.* at 30. Mr. Chavez-Morales did not object to the term of imprisonment or to the term of supervised release.

## II. DISCUSSION

### A. *Term of Imprisonment*

On appeal, Mr. Chavez-Morales argues that the district court failed to "meaningfully consider" his argument that his economic motivation for illegally reentering the United States mitigated the seriousness of his offense. Mr. Chavez-Morales contends that this failing on the part of the district court amounted to procedural error because the district court imposed an upward variant sentence without adequately addressing one of Mr. Chavez-Morales's arguments for a lower sentence. The government contends that Mr. Chavez-Morales, by not objecting to the adequacy of the district court's consideration of and response to his economic motivation argument, did not preserve the issue for appellate review and that, if we

9

review the argument, we should do so under a plain error standard. In reply, Mr. Chavez-Morales argues for an abuse of discretion standard of review but, alternatively, presents an argument under the plain error standard. We discuss the appropriate standard of review before turning to the merits of Mr. Chavez-Morales's argument that the district court committed procedural error.

## 1. Standard of Review

*United States v. Gantt*, 679 F.3d 1240 (10th Cir. 2012), provides guidance regarding the standard we apply to review Mr. Chavez-Morales's procedural error argument. In *Gantt*, the defendant filed a sentencing memorandum raising several arguments counseling against the above-Guidelines sentence the district court indicated it was prepared to impose. 679 F.3d 1244, 1247. Mr. Gantt renewed his arguments at the sentencing hearing; but, the district court imposed the previously contemplated, above-Guidelines sentence. *Id.* at 1247. On appeal, Mr. Gantt argued the district court committed procedural error by not adequately considering several of his arguments before imposing its sentence. *Id.* at 1247. This court concluded Mr. Gantt had failed to preserve his procedural reasonableness challenge to his sentence because he never objected to the extent of the district court's consideration of and explanation for rejecting his arguments for a lesser sentence. *See id.* at 1247-48. We instructed that to preserve a procedural reasonableness challenge based on the sentencing court's failure to consider and explain its reasons for rejecting a defendant's argument for a lesser sentence, the defendant "needed to alert the court that its explanation was inadequate, which ordinarily would require an objection after

the court had rendered sentence." *Id.*; *see United States v. Pacheco-Donelson*, ___ F.3d ___, 2018 WL 3078024, at *1 (10th Cir. June 22, 2018) (applying plain error review to procedural challenge on appeal because "substantive objection did not preserve the procedural issue on the adequacy of the findings").

Here, Mr. Chavez-Morales presented his economic motivation argument in a sentencing memorandum filed subsequent to the district court indicating that it might impose an above-Guidelines sentence. Mr. Chavez-Morales renewed his economic motivation argument at the sentencing hearing. Before imposing its sentence, the district court commented on Mr. Chavez-Morales's economic motivation argument three times, and Mr. Chavez-Morales did not raise an objection on the ground that the district court's comments on the argument did not amount to meaningful consideration for procedural purposes. Thus, Mr. Chavez-Morales did not alert the district court that its explanation was inadequate so as to permit the district court to further consider and elaborate on its reasons for discounting the argument. Therefore, in accord with *Gantt*, Mr. Chavez-Morales did not preserve his argument and the argument is subject to plain error review.[4]

_____

[4] Mr. Chavez-Morales urges us to rely on *United States v. Lopez-Avila*, 665 F.3d 1216 (10th Cir. 2011), to reach the opposite conclusion. In *Lopez-Avila*, we concluded that a defendant's initial argument on a matter preserved the argument for appellate review where an objection would have been a "superfluous and futile gesture" given the district court's response to the argument. *Id.* at 1218. While Mr. Chavez-Morales objecting to the substance of the district court's reasons for rejecting his economic motivation argument may have been futile, an objection regarding the extent of the district court's consideration of and response to his economic motivation argument would not have been "superfluous and futile" because it would

11

Under plain error review, the defendant must establish that "(1) the district court committed error; (2) the error was plain—that is, it was obvious under current well-settled law; (3) the error affected the Defendant's substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Gantt*, 679 F.3d at 1246 (internal quotation marks omitted). "Because all four requirements must be met, the failure of any one will foreclose relief." *Id.* Finally, although Mr. Chavez-Morales did not present an argument for plain error review in his opening brief, his advancement of a plain error argument in his reply brief is sufficient to permit us to consider the argument under plain error review. *See United States v. Courtney*, 816 F.3d 681, 684 (10th Cir. 2016).

## 2. Analysis of Argument

"[W]here a defendant has raised a nonfrivolous argument that the § 3553(a) factors warrant a [sentence below that imposed by the district court], we must be able to discern from the record that 'the sentencing judge . . . considered whether the [sentence imposed] actually conforms, in the circumstances, to the statutory factors.'" *United States v. Sanchez-Juarez*, 446 F.3d 1109, 1117 (10th Cir. 2006) (quoting *United States v. Cunningham*, 429 F.3d 673, 676 (7th Cir. 2005)); *see United States v. Estrada-Mederos*, 784 F.3d 1086, 1090 (7th Cir. 2015) ("The district court is required to adequately explain the chosen sentence . . . . A judge who fails to mention a ground of recognized legal merit . . . is likely to have committed an error or oversight." (quotation marks and citations

have permitted the district court an opportunity to assess whether further discussion of the argument was necessary to satisfy procedural requirements.

12

omitted)). "Potential merit does not mean the sentencing court must accept the argument, but it ordinarily will deserve explicit comment." *Estrada-Mederos*, 784 F.3d at 1091. And, courts have recognized that a defendant's economic motivations for committing an offense may be a meritorious mitigating argument under the § 3553(a) factors. *See United States v. Arias-Lopez*, 533 F. App'x 824, 827 & n.2 (10th Cir. 2013) (identifying economic motivation for illegal reentry as a "potentially mitigating fact[]"); *cf. Wisconsin v. Mitchell*, 508 U.S. 476, 485 (1993) ("[S]entencing judges have considered a wide variety of factors in addition to evidence bearing on guilt in determining what sentence to impose on a convicted defendant. The defendant's motive for committing the offense is one important factor." (citations omitted)). Accordingly, where Mr. Chavez-Morales argued that economic incentives in the United States motivated him to commit his illegal reentry offense and that these incentives lessened the seriousness of his offense, the district court needed to address the argument before imposing an above-Guidelines sentence.

Contrary to Mr. Chavez-Morales's argument, however, the transcript of the sentencing hearing shows that the district court responded to the argument on three separate occasions. Although the district court acknowledged that wages in the United States were higher than wages in Mexico, it discounted the logic and veracity of Mr. Chavez-Morales's argument on the ground that Mr. Chavez-Morales had earned less money during the seven-plus years he had spent in a United States prison then he would have had he worked in Mexico. The district court also rejected the mitigating value of Mr. Chavez-Morales's economic argument based on the limited

13

amount of time between his most recent deportation and his present offense, noting that Mr. Chavez-Morales "didn't really try to make a go of it [in Mexico]."[5] ROA Vol. 3 at 26. Accordingly, the district court did not commit procedural error because it satisfied its procedural duty to consider Mr. Chavez-Morales's economic motivation argument and provided reasons for rejecting the argument before imposing an above-Guidelines sentence.[6]

### B.   *Imposition of Supervised Release*

Mr. Chavez-Morales argues that the district court committed procedural error by imposing a term of supervised release without considering U.S.S.G. § 5D1.1(c). Mr. Chavez-Morales, however, concedes that because he did not object to the imposition of a term of supervised release, his argument is subject to plain error review. As noted earlier, under plain error review, the defendant must establish that "(1)

---

[5] Mr. Chavez-Morales also suggests that the district court erred by relying on a need to promote respect for the law, *see* 18 U.S.C. § 3553(a)(2)(A), when selecting Mr. Chavez-Morales's sentence after it conceded that a "subjective" disrespect for the law did not motivate Mr. Chavez-Morales to commit his most recent offense, *see* ROA Vol. 3 at 29. We read the district court's comments more narrowly than does Mr. Chavez-Morales. It may be the case that a disrespect for the law was not the prevailing reason behind Mr. Chavez-Morales's decision to illegally reenter the United States. But, as the district court noted, it is not hard to conclude that an individual has objectively disrespected the laws of the United States by incurring five independent convictions for the same general offense. Separately, nothing in the language of § 3553(a)(2)(A) requires the district court to find a subjective disrespect for the law before relying on the factor when determining what sentence is sufficient, but not greater than necessary, to satisfy the § 3553(a) factors. Instead, a district court may rely on § 3553(a)(2)(A) to select a sentence that promotes a general, societal respect for the law.

[6] Because Mr. Chavez-Morales has not demonstrated that the district court committed procedural error, his challenge to his sentence would also fail under the more favorable abuse of discretion standard of review for which he advocated.

14

the district court committed error; (2) the error was plain—that is, it was obvious under current well-settled law; (3) the error affected the Defendant's substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Gantt*, 679 F.3d at 1246 (internal quotation marks omitted).[7] We commence our plain error analysis by discussing the procedural steps in which the district court needed to engage before imposing supervised release on Mr. Chavez-Morales given that he was likely to be deported upon completing his term of imprisonment.

Where Mr. Chavez-Morales's present illegal reentry conviction occurred after a conviction for an aggravated felony, his conviction carried a maximum sentence of twenty years' imprisonment and qualified as a Class C felony. *See* 8 U.S.C. § 1326(b)(2), 18 U.S.C. § 3559(a)(3). Section 3583 of Title 18 authorizes a term of supervised release of "*not more than* three years" for a Class C felony. 18 U.S.C. § 3583(b)(2) (emphasis added). Accordingly, the district court was not statutorily required to impose a term of supervised release on Mr. Chavez-Morales.

Section 5D1.1 of the United States Sentencing Guidelines advises that "[t]he court *ordinarily* should not impose a term of supervised release in a case in which supervised

---

[7] The Supreme Court's recent decision in *Rosales-Mireles v. United States* alters the threshold for satisfying the fourth prong of the plain error analysis relative to an "ordinary case" involving "a plain Guidelines error that affects a defendant's substantial rights." ___ S. Ct. ___, 2018 WL 3013806, at *12 (June 18, 2018). But, *Rosales-Mireles* arose within the context of an error in calculating the defendant's Guidelines range. *See id.* at *4. Because Mr. Chavez-Morales fails to satisfy the third prong of the plain error analysis, we need not decide whether the district court's failure to tie its comments about deterrence to its imposition of a term of supervised release qualifies as a Guidelines error or whether *Rosales-Mireles* applies to Guidelines errors that do not involve the calculation of a Guidelines range.

15

release is not *required* by statute and the defendant is a deportable alien who likely will be deported after imprisonment." U.S.S.G. § 5D1.1(c) (emphasis added). Commentary to U.S.S.G. § 5D1.1 provides the rationale for ordinarily not imposing supervised release on a defendant who is a deportable alien:

> Unless such a defendant legally returns to the United States, supervised release is unnecessary. If such a defendant illegally returns to the United States, the need to afford adequate deterrence and protect the public ordinarily is adequately served by a new prosecution. The court should, however, consider imposing a term of supervised release on such a defendant *if the court determines it would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case*.

U.S.S.G. § 5D1.1 n.5 (emphasis added).

In imposing a term of supervised release, the district court did not acknowledge or consider the guidance in U.S.S.G. § 5D1.1(c) and the accompanying commentary. Nor did the district court specifically link its imposition of supervised release to a need for deterrence or protection. And while the district court did focus on the need for specific deterrence when selecting Mr. Chavez-Morales's term of imprisonment, Tenth Circuit precedent prevents us from imparting the district court's reasons under the § 3553(a) factors for selecting a term of imprisonment onto its decision to impose a term of supervised release. *See United States v. Zanghi*, 209 F.3d 1201, 1205 (10th Cir. 2000) ("It is not appropriate simply to assume that the sentencing court's reason for imposing a prison term likewise extends to its decisions regarding supervised release . . . nor is it consistent with our appellate function to do so."). Instead, the district court should have recognized the advice in U.S.S.G. § 5D1.1(c) regarding ordinarily not imposing

16

supervised release and then explicitly tied its imposition of supervised release to the added deterrent effect of doing so in Mr. Chavez-Morales's case, the need to protect the public, and any of the other relevant 18 U.S.C. § 3583(c) factors governing supervised release. By not engaging in these procedural steps, the district court committed error. *See United States v. Solano-Rosales*, 781 F.3d 345, 353–54 (6th Cir. 2015) (concluding that district court commits error by imposing term of supervised release on deportable alien without acknowledging U.S.S.G. § 5D1.1(c) and without providing "reasoning for taking a different course of action" than recommended by § 5D1.1(c)); *see also United States v. Azcona-Polanco*, 865 F.3d 148, 153 (3d Cir. 2017) (suggesting that district court must acknowledge U.S.S.G. § 5D1.1(c) and "must 'explain and justify' the imposition of supervised release on a deportable immigrant" (quoting *United States v. Murray*, 692 F.3d 273, 281 (3d Cir. 2012))).

Although the district court committed error, we conclude that Mr. Chavez-Morales failed to sustain his burden on the third prong of the plain error analysis.[8] Under the third prong, Mr. Chavez-Morales must establish that there is "a 'reasonable probability' that the defects in his sentencing altered the result of the proceedings." *United States v. Dazey*, 403 F.3d 1147, 1175 (10th Cir. 2005) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 81–82 (2004)). Mr. Chavez-Morales argues that because U.S.S.G.

---

[8] Because Mr. Chavez-Morales fails to sustain his burden on the third prong of the plain error analysis, we need not address the second prong—whether the district court's error was plain. *See United States v. Gonzalez-Huerta*, 403 F.3d 727, 736 (10th Cir. 2005) (finding it unnecessary to analyze third prong of plain error analysis where appellant did not satisfy fourth prong).

17

§ 5D1.1(c) indicates that supervised release is "ordinarily" not appropriate, it follows that there is a reasonable probability that the district court would not have imposed a term of supervised release had it acknowledged and considered § 5D1.1(c). Mr. Chavez-Morales's argument, however, does not account for the specific facts of his case.

From the time of considering the fast-track plea agreement through the sentencing hearing, the district court repeatedly expressed concerns about Mr. Chavez-Morales's history of illegal reentry offenses, as well as the need to deter Mr. Chavez-Morales so that he did not illegally reenter the United States a sixth time.[9] And while the district court did not adequately tie its imposition of a term of supervised release to deterrence for purposes of our error analysis, threads of a deterrence rationale appear in the

---

[9] Although *United States v. Zanghi* prohibits us from ascribing the district court's reasons for selecting a term of imprisonment to its decision to impose a term of supervised release when determining if the district court adequately explained its decision to impose supervised release, *Zanghi* involved a preserved challenge to a term of supervised release that we reviewed under an abuse of discretion standard. 209 F.3d 1201, 1203 (10th Cir. 2000). Accordingly, nothing in *Zanghi* prohibits us from considering the proceedings as a whole when determining whether Mr. Chavez-Morales established a reasonable probability of a different result absent the error. And, other circuits that follow the reasoning of *Zanghi* have considered the proceedings as a whole, including the district court's explanation for its sentence, when evaluating the third prong of the plain error analysis relative to a challenge to the imposition of supervised release in light of U.S.S.G. § 5D1.1(c). *See United States v. Azcona-Polanco*, 865 F.3d 148, 153–54 (3d Cir. 2017) (noting that "[t]he requirement that a district court provide an adequate explanation applies to supervised release" but considering proceedings as a whole, including defendant's history and characteristics, when evaluating third prong of plain error analysis); *United States v. Solano-Rosales*, 781 F.3d 345, 352, 354–55 (6th Cir. 2015) (acknowledging requirement that district court provide reasons specific to imposition of supervised release but considering all of district court's comments when evaluating third prong of plain error analysis).

18

statement made by the district court contemporaneous to its decision to impose supervised release:

> The term is unsupervised with mandatory and standard conditions, and the following special condition. The Defendant shall not illegally re-enter the United States. And I hope this time around the Defendant will listen to what I'm telling him, and listen to what his lawyer told him. You will never, ever be authorized to come to the United States legally. So unless you want to essentially spend the rest of your life sitting in a U.S. prison cell, I strongly recommend that after you serve this sentence and you're deported, you never return to the United States.

ROA Vol. 3 at 30. Finally, at a hearing prior to sentencing, Mr. Chavez-Morales's own counsel suggested that the district court could impose a term of supervised release as an added means of deterrence because the term of supervised release would permit the district court to impose a revocation sentence should Mr. Chavez-Morales illegally return to the United States during the term of supervised release.

Considering the proceedings as a whole, we conclude that (1) the need for deterrence was particularly high in Mr. Chavez-Morales's case given his numerous illegal reentry convictions; (2) both the district court and Mr. Chavez-Morales's own counsel recognized the need for specific deterrence; and (3) the imposition of a term of supervised release was likely to have a strong deterrent effect on Mr. Chavez-Morales given the district court's imposition of an above-Guidelines sentence and its suggestion to Mr. Chavez-Morales that, if he returned, the same district court judge would impose a lengthy revocation sentence. On these specific facts, Mr. Chavez-Morales has not demonstrated a reasonable probability that if we were to remand for resentencing, the

19

district court would decline to reimpose the same term of supervised release.[10] *See Azcona-Polanco*, 865 F.3d at 154–55 (no effect on substantial rights where district court cited defendant's serious criminal history, failure to comply with order of removal, prior illegal reentry conviction, and purchase of false documents in effort to remain in United States); *see also United States v. Alvarado*, 720 F.3d 153, 160 (2d Cir. 2013) (relying on defendant's criminal history to conclude that, if district court did not adequately explain reasons for imposing supervised release on deportable alien defendant, any error did not affect substantial rights); *United States v. Cancino-Trinidad*, 710 F.3d 601, 606–07 (5th Cir. 2013) (concluding that, in light of defendant's criminal record, defendant showed only a "possibility," not a "probability," of different result at resentencing such that the error did not affect substantial rights).[11]

---

[10] Mr. Chavez-Morales points to *United States v. Dieudonne*, 695 F. App'x 657 (3d Cir. 2017), in support of his argument that there is a reasonable probability that the district court would not have imposed a term of supervised release had it acknowledged and considered U.S.S.G. § 5D1.1(c). Apart from the fact that *Dieudonne* is an unpublished, out of circuit decision, the government in *Dieudonne* conceded the third prong of the plain error analysis, *Dieudonne*, 695 F. App'x at 661. Furthermore, the defendant in *Dieudonne*, while subject to deportation, was convicted of wire fraud offenses rather than an immigration offense and nothing in the Third Circuit's opinion suggests that the defendant was in the United States illegally, had ever illegally reentered the country after deportation, or had even sustained a prior felony conviction. *See id.* at 658. Accordingly, *Dieudonne* has little persuasive value when considered in light of Mr. Chavez-Morales's history and characteristics.

[11] Where Mr. Chavez-Morales fails to satisfy the third prong of the plain error test, we need not evaluate his arguments under the fourth prong of that analysis. *See United States v. Gantt*, 679 F.3d 1240, 1246 (10th Cir. 2012).

## III.   CONCLUSION

We **AFFIRM** the district court's judgment with respect to both Mr. Chavez-Morales's term of imprisonment and term of supervised release.