**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 18, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

TRACEY BEAVER,

    Defendant - Appellant.

No. 17-2151
(D.C. No. 1:16-CR-04338-MV-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT*[*]**
_____

Before **EID**, **BALDOCK**, and **EBEL**, Circuit Judges.
_____

In this direct criminal appeal, Defendant Tracey Beaver brings both substantive and procedural unreasonableness challenges to the 120-month sentence imposed after he pled guilty to two counts of involuntary manslaughter. Because it appears the district court erroneously considered discrepancies between the federal sentencing guidelines and the corresponding state sentencing structures in assessing this sentence, we VACATE Beaver's 120-month sentence and REMAND for resentencing without consideration of these disparities.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I.    BACKGROUND

In 2016, Tracey Beaver and three passengers, all enrolled members of the Navajo Nation, were driving down a gravel road in Indian country when their vehicle crashed, rolling several times and throwing the occupants from the cab of the truck. When police and EMTs responded, one passenger was walking down the street away from the crash and Mr. Beaver was on the ground outside the truck.  The other two passengers, who were sisters, were lying motionless and breathless on the ground. Tragically, the first EMT to respond to the scene was their mother.  Efforts to revive the sisters were unsuccessful, and they were later pronounced dead.

An investigation into the accident determined that all four occupants were sitting in the front seat of the truck, and that the vehicle was traveling approximately 80 miles per hour when it began to lose control.  Beaver, who was driving, admitted that he had been drinking prior to driving, a fact corroborated by the surviving passenger. Ultimately breathalyzed roughly three hours after the accident, Beaver registered a blood alcohol content of .311.

Because the accident occurred in Indian country, and because Mr. Beaver is an enrolled member of the Navajo Nation, he was charged by information in federal court with two counts of involuntary manslaughter in violation of 18 U.S.C. §§ 1112 and 1153.  Mr. Beaver pleaded guilty to both counts without a plea agreement.

In preparation for Beaver's sentencing, the probation office prepared a Pre-Sentence Investigation Report ("PSR") to which no party objected and which calculated Beaver's advisory Guidelines range at 41 to 51 months in prison.  The

PSR did note, however, that in light of Beaver's history of alcohol-related offenses, "an upward variance outside the advisory guideline range may be warranted in this case."  R. Vol. II at 22.[1]

In response, the parties filed simultaneous sentencing memoranda.  The Government initially argued based on the sentencing factors found in 18 U.S.C. § 3553(a) that Beaver's advisory Guidelines range did "not adequately reflect the harm caused, and [did] not account for [Beaver's] history."  R. Vol. I at 34.  The Government also noted that what it called "sentencing inequities" meant that Beaver's advisory Guidelines range was lower than it would have been had all three passengers survived and he had been charged with Assault Resulting in Serious Bodily Injury instead of Involuntary Manslaughter.  For these reasons, the Government requested an upward variance, recommending that the sentences for each of the two counts of conviction run consecutively for a total sentence of 120 months.

In contrast, while Beaver did not object to the factual statements in the PSR, he did object to its insinuation that an upward variance was appropriate.  In support of his argument he noted that, had he been charged in this case in New Mexico instead of in Federal court, his maximum sentence would have been forty-eight

---

[1] According to the PSR, "[t]he defendant's criminal history reflects arrests and convictions for Public Intoxication (19 times), Open Container (two times), [and] Driving While Under the Influence of Alcohol and Aggravated DWI (six times) between 1997 and 2013."  R. Vol. II at 21.  Mr. Beaver had also previously been convicted of Assault Resulting in Serious Bodily Injury for acts occurring while he was intoxicated.  Id. at 22.

months. Therefore, he argued that the court should impose a within-Guidelines sentence in order to avoid "an unwarranted sentencing disparity which has a disparate impact on [Beaver] based solely on his status as a Native American." R. Vol. I at 46.

The Government later responded to this argument, noting that New Mexico's involuntary manslaughter statute, on which defense counsel had relied to establish a comparison to New Mexico law, would not apply to Beaver's conduct, because New Mexico has a specific charge for Homicide by Vehicle. R. Vol. I at 53 (citing N.M. Stat. Ann. § 66-8-101 (1978)). Based on Mr. Beaver's history of criminal alcohol abuse, the Government calculated that his actual New Mexico sentence would have ranged from a minimum of forty-eight months to a maximum of 456 months. Based on the federal guidelines range of 41–51 months, the Government concluded that "the Federal Court system provides for a more lenient sentencing structure than in State Court for this type of crime." Id. at 54 The Government then concluded this section of its response by noting that "[i]f there is any disparity, a comparison to State Court would favor a sentence more in line with the United States['] recommendation than the one requested by Defendant." Id. at 56.

At sentencing, the defense elected to rest on its sentencing memorandum, but the Defendant spoke about his personal remorse. The court also heard victim impact statements from the mother of the deceased women (who was the initial EMT who responded to the crash) and the victims' sister.

The Government then spoke at length about its request for an upward variance. It reiterated its argument that the sentencing guidelines contain an inherent

4

contradiction in that had Beaver's victims survived, he could have been charged and sentenced under the federal code provisions concerning assault resulting in serious bodily injury, but because his victims died he was prosecuted under involuntary manslaughter, which is subject to lower guidelines ranges than assault. The Government also noted that a variance was warranted because "there is an additional enhancement for assault with serious bodily injury when someone violates a restraining order and commits that act[,]" but that this enhancement did not exist for involuntary manslaughter. R. Vol. III at 20. Because Mr. Beaver was the subject of a restraining order taken out by at least one of the victims, the Government argued the absence of this enhancement in the guidelines could be addressed by an upward variance. The Government also argued for an upward variance on the basis of Mr. Beaver's history of criminal alcohol abuse.

Finally, the Government noted that "[t]here was also an argument, to some degree, in both the defense Sentencing Memorandum and in our response, regarding the disparate sentences [between state and federal court]." Id. at 20. Counsel then reiterated the calculation that would apply in state court from its written response, concluding that "[s]o if there is any disparate treatment, it's in favor of the Defendant in this sort of scenario, because it is allowing him to receive a sentence that . . . could be less than he would receive on the state side." Id. at 21.

The district court then delivered its sentence from the bench. After discussing the ravages of addiction, the district court told Mr. Beaver that she felt "the Government's recommendation is the right thing to do today." Id. at 28. The court

5

noted that Mr. Beaver had not "taken advantage of the resources" provided by supervision following previous court orders, because his "heart" and "head" were not "in it." Id. The court then adopted the PSR and discussed the offense itself, and Mr. Beaver's history of alcohol abuse. Id. at 30-34.

At this point the court began walking through the factors listed in 18 U.S.C. § 3553(a). When it reached the factor at § 3553(a)(6)—"the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"—she commented that "Mr. Beaver asserts that a sentence within the guideline range will avoid an unwarranted sentencing disparity between Native Americans sentenced for involuntary manslaughter under federal law and other New Mexicans who are convicted of involuntary manslaughter in New Mexico courts." R. Vol. III at 35. The court then explained the Government's response, and concluded that "[a] sentence in accordance with the guidelines would be significantly lower than the Defendant would receive if convicted of homicide by vehicle under New Mexico law." Id. at 37.

Ultimately, the district court concluded "that an upward variance is indeed appropriate in this case." Id. The court noted Mr. Beaver's history of driving while intoxicated, public intoxication, and open container violations, and that "he has a history of alcohol abuse dating back many years." Id. The court also noted that this incident "was particularly traumatic for the family of the victims[,]" and that "the victims left behind young daughters who have been strongly affected by the death of their mothers." Id. Finally, the court concluded that "[a]dditionally, as previously

6

discussed, the guideline range provides for a significantly lower sentence than Mr. Beaver could have received in State Court.  For these reasons, an upward variance is appropriate."  Id. (emphasis added).

The court then handed down a sentence of sixty months as to each charge, to run consecutively for a total sentence of 120 months.  Following the imposition of the sentence, defense counsel rose "to interpose an objection that the sentence is procedurally and substantively unreasonable[,]" because "the Court has imposed a sentence that's two-and-a-half times the recommended Guideline Sentence.  For the reasons more fully set out in our sentencing memorandum, we do object."  Id. at 41.

## II.    DISCUSSION

As a threshold matter we must determine whether Beaver sufficiently objected before the district court to the procedural error he now alleges.  If so, our review is formally for abuse of discretion, however we review any legal determinations— including whether it is appropriate to consider the disparities at issue in this appeal— de novo.  See United States v. Lopez-Avila, 665 F.3d 1216, 1218–19 (10th Cir. 2011).

It is not enough, however, for Beaver to have voiced a generalized objection to his sentence.  See United States v. Gantt, 679 F.3d 1240, 1246–47 (10th Cir. 2012).  Rather, his objection must sufficiently apprise the district court of the alleged error such that the court could have, itself, corrected the error had it been so inclined.  See, e.g., United States v. Chavez-Morales, 894 F.3d 1206, 1213 (10th Cir. 2018).  "We

7

do not abide appeals of alleged errors that could have been easily avoided by timely objection." Gantt, 679 F.3d at 1247.

Here, while Beaver did object in his sentencing memorandum to an upward variance, he did not do so on the basis that it was improper for the court to consider federal-state sentencing disparities. At the sentencing hearing, defense counsel indicated that he "[did] not have a whole lot more to add outside of [his] Sentencing Memorandum[,]" R. Vol. III at 5, and at no time did counsel address the Government's response to his sentencing memorandum suggesting defense counsel erred in identifying the relevant New Mexico statute. Finally, after the district court had imposed its sentence, defense counsel rose "to interpose an objection that the sentence is procedurally and substantively unreasonable. The Court has imposed a sentence that's two-and-a-half times the recommended Guideline Sentence. For the reasons more fully set out in our sentencing memorandum, we do object." Id. at 41.

While this was sufficient to alert the court as to Defendant's contention that his offense was substantively unreasonable, such a generalized objection was insufficient to alert the district court of the alleged error currently at the heart of Beaver's procedural unreasonableness appeal: that it was improper to use federal-state sentencing disparities as justification for departing upward from guideline imprisonment recommendations. Therefore, as to Beaver's claim of procedural unreasonableness, our review is for plain error. See United States v. Pacheco-Donelson, 893 F.3d 757, 759 (10th Cir. 2018) (holding objection to substantive

8

reasonableness of sentence inadequate to preserve objection to specific procedure later challenged as procedurally unreasonable).

## A. *Substantive Unreasonableness*

We turn first to Beaver's challenge to the substantive reasonableness of his sentence. "We review the substantive reasonableness of 'all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard.'" United States v. Lente, 759 F.3d 1149, 1158 (10th Cir. 2014) (quoting Gall v. United States, 552 U.S. 38, 41 (2007)). "Under this standard we will 'deem a sentence unreasonable only if it is arbitrary, capricious, whimsical, or manifestly unreasonable.'" Id. (quoting Gantt, 679 F.3d at 1249). While a "major" variance from the applicable Guidelines range requires "a more significant justification than a minor one[,]" Gall, 552 U.S. at 50, there is no "rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." Id. at 47.

Under this deferential standard of review, there is nothing "arbitrary, capricious, whimsical, or manifestly unreasonable" with the substantive length of Beaver's sentence. In addressing the sentencing factors found in 18 U.S.C. § 3553(a), the district court specifically cited not only Beaver's extensive history of alcohol-related criminal offenses—including several related to driving while under the influence—but also the horrific circumstances of this crime—in which two sisters

died, each leaving behind young children, and their mother was the first EMT responder to arrive on the scene.

For these reasons, the district court did not substantively abuse its discretion in imposing consecutive 60-month sentences for a total of 120 months.

## B. *Procedural Unreasonableness*

We turn next to Beaver's procedural objection. Under the plain-error standard of review, we will reverse if: "(1) the district court committed error; (2) the error was plain—that is, it was obvious under current well-settled law; (3) the error affected the Defendant's substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." United States v. Chavez-Morales, 894 F.3d 1206, 1214 (10th Cir. 2018) (quoting Gantt, 679 F.3d at 1246). The defendant bears the burden of persuading the court that the alleged error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." Rosales-Mireles v. United States, 138 S. Ct. 1897, 1909 n.4 (2018) (alteration in original) (quoting United States v. Vonn, 535 U.S. 55, 63 (2002)).

Here, we conclude the first two prongs of the plain-error standard are met. In United States v. Wiseman, 749 F.3d 1191, 1196 (10th Cir. 2014), we held that 18 U.S.C. § 3553(a)(6)'s requirement that district courts consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" applied only to similarly situated federal defendants. In so holding we explained that a district court's authority to consider sentencing disparities did not extend to disparities between the applicable federal

10

sentence and the likely sentence a defendant would have received had he been charged in state court. Wiseman, 749 F.3d at 1196; see also United States v. Branson, 463 F.3d 1110, 1112 (10th Cir. 2006) ("Adjusting federal sentences to conform to those imposed by the states where the offenses occurred would not serve the purposes of § 3553(a)(6), but, rather, would create disparities within the federal system, which is what § 3553(a)(6) is designed to discourage.").

Here, the district court expressly justified the upward variance it imposed in part because of the disparity between Beaver's advisory Guidelines range and the likely sentence he would have received in state court. After citing several other justifications for a variance, the district court concluded: "Additionally, as previously discussed, the guideline range provides for a significantly lower sentence than Mr. Beaver could have received in State Court. For these reasons, an upward variance is appropriate." R. Vol. III at 37 (emphasis added). While we are always hesitant to ascribe error on the basis of a transcript that does little to reflect the nuances available to a trial judge, we must conclude, on this record, that the court explicitly justified the upward variance, at least in part, on disparities between similarly situated federal and state defendants. This was error under established circuit precedent, and therefore satisfies the first two prongs of the plain-error standard.

Anticipating such a ruling, the Government argues that any alleged error was invited by the Defendant. On these facts, we disagree with the government and find

11

no invited error.  See United States v. Thornton, 846 F.3d 1110, 1117 n.3 (10th Cir. 2017).[2]

But holding that there was plain error that was not invited by the defendant does not end our plain-error inquiry.  We still must ask whether the error affected the defendant's substantial rights, and if so, whether leaving it uncorrected would "seriously affect[] the fairness, integrity or public reputation of judicial proceedings." Rosales-Mirales, 138 S. Ct. at 1906 (quoting United States v. Olano, 507 U.S. 725, 736 (1993)).

In order to prove that the error affected his substantial rights, Beaver "must 'show a reasonable probability that, but for the error claimed, the result of the proceeding would have been different.'"  United States v. Pacheco-Donelson, 893 F.3d 757, 760 (10th Cir. 2018) (quoting United States v. Clark, 415 F.3d 1234, 1240 (10th Cir. 2005)).  Here, this showing is satisfied by the face of the district court's sentencing statement.  Perhaps the district court's decision to sentence Beaver to 120 months was born primarily out of his history of alcohol abuse and the uniquely tragic circumstances of this incident.  As we noted above, such a sentence imposed for these reasons, and these reasons alone, would not be substantively unreasonable.  But in summarizing its justifications for an upward variance, the district court cited not only these two rationalizations, but also expressly relied on a comparison between the state and federal sentences.  R. Vol. III at 37 ("Additionally, . . . the guideline

---

[2] Appellee's Motion for Leave to File a Supplemental Letter Brief calling the court's attention to United States v. Thornton,846 F.3d 1110 (10th Cir. 2017) is denied as moot because the court discovered this case and addressed it on its own.

12

range provides for a significantly lower sentence than Mr. Beaver could have received in State Court. For these reasons an upward variance is appropriate.") (emphasis added). Given the district court's explicit invocation of the discrepancy as one of the reasons a variance was appropriate, we conclude Beaver has satisfied the third prong of the plain-error standard.

While the fourth prong of the plain-error standard is "permissive, not mandatory," the Supreme Court instructs that courts "'should' correct a forfeited plain error that affects substantial rights 'if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.'" Rosales-Mireles, 138 S. Ct. at 1906 (quoting Olano, 507 U.S. at 735–36). Errors that affect a defendant's prison sentence are particularly ripe for review under this standard because of how erroneously enhanced prison sentences undermine the public perception of the integrity of the judicial system. See id. at 1907 ("The possibility of additional jail time . . . warrants serious consideration in a determination whether to [reverse under plain error review]. It is crucial in maintaining public perception of fairness and integrity in the judicial system that courts exhibit regard for fundamental rights and respect for prisoners as people.") (internal quotations omitted). Furthermore, unlike errors at trial, errors at sentencing "ultimately result from judicial error." Id. at 1908. Finally, from a functional perspective, a remand for resentencing imposes only a slight burden on the parties and the judiciary, given that "resentencing is a brief event, normally taking less than a day and requiring the attendance of only the defendant, counsel, and court personnel." Id. (internal quotations omitted).

13

For these reasons, we have held that an error in calculating or applying the sentencing guidelines will usually satisfy the fourth element of the plain error test. See, e.g., United States v. Sabillon-Umana, 772 F.3d 1328, 1333 (10th Cir. 2014). We see no reason to deviate from that reasoned approach when the error potentially operates in a similar manner to enhance a defendant's sentence. After all, "[w]hat reasonable citizen wouldn't bear a rightly diminished view of the judicial process and its integrity if courts refused to correct obvious errors of their own devise that threaten to require individuals to linger longer in federal prison than the law demands?" Id.

Therefore, because we cannot conclude that Beaver's sentence was not improperly enhanced on the basis of supposed discrepancies between his advisory Guidelines range and the sentences received by similarly situated defendants in New Mexico state courts, we VACATE the district court's sentence and REMAND for resentencing. Perhaps the district court will simply impose the same sentence on remand, this time omitting any reference to New Mexico state courts. As we observed above, such a sentence would appear to be a permissible substantive exercise of the court's sentencing discretion. But Mr. Beaver, like all criminal

defendants, deserves to know that his time in prison was not extended by plain error.

The case is remanded.

Entered for the Court


David M. Ebel
Circuit Judge
